437 A.2d 411

**Patricia HENDERSON, Appellant,**

**v.**

**STATE FARM MUTUAL INSURANCE CO.**

Superior Court of Pennsylvania.

Argued Jan. 26, 1981.

Filed Nov. 13, 1981.

Petition for Allowance of Appeal Denied Feb. 16, 1982.

334

D. Michael Emuryan, Woodlyn, for appellant.

Raymond J. Falzone, Jr., Media, for appellee.

Before CAVANAUGH, JOHNSON and LIPEZ, JJ.

CAVANAUGH, Judge:

On February 18, 1979, Patricia Henderson, the appellant herein, was operating her automobile in Ridley Park, Delaware County, Pennsylvania, when her vehicle was struck in

the rear by a station wagon operated by Allan Hapgood Kipp. At the time of the accident the appellant was insured by the appellee, State Farm Mutual Insurance Company. Appellant's insurance policy included uninsured motor vehicle coverage.[1] Under the policy an uninsured motor vehicle is one insured for bodily injury liability at the time of the accident but "the insuring company denies coverage or is or becomes insolvent." Mr. Kipp was insured by Safeguard Mutual Insurance Company.

As a result of the accident the appellant suffered serious injuries requiring hospitalization for several days. She suffered acute cervical strain which necessitated medication and the wearing of a cervical collar. The appellant submitted a claim to the Safeguard Mutual Insurance Company which was not paid.

On May 29, 1979, the Insurance Commissioner of Pennsylvania issued a suspension order against Safeguard Mutual Insurance Company suspending it from business. The order

1. The policy issued by State Farm Mutual Insurance Company contained the following:

*Uninsured Motor Vehicle*—means:

1. a land motor vehicle not insured or bonded for bodily injury liability at the time of the accident; or

2. a land motor vehicle insured or bonded for bodily injury liability at the time of the accident; but

a. the limits of liability are less than required by the financial responsibility act of the state where *your car* is mainly garaged; or

b. the insuring company denies coverage or is or becomes insolvent; or

3. a "hit-and-run" land motor vehicle whose owner or driver remains unknown and which strikes:

a. the *insured* or

b. the vehicle the *insured* is *occupying* and causes *bodily injury* to the *insured.*

Deciding Fault and Amount.

Two questions must be decided by agreement between the *insured* and us:

1. Is the *insured* legally entitled to collect damages from the owner or driver of the *uninsured motor vehicle*; and

2. If so, in what amount?

If there is no agreement, these questions shall be decided by arbitration at the request of the *insured* or us. The Pennsylvania Arbitration Act of 1927, as amended from time to time, shall apply.

We are not bound by any judgment against any *person* or organization obtained without our written consent.

also stated that an examination of the books, records, accounts and affairs of Safeguard revealed that "as of December 3, 1977, as of December 31, 1978, and at present, Safeguard is insolvent."[2]

Since appellant did not receive compensation from the insurance carrier of the individual whose vehicle struck her, and since that individual's insurer was apparently insolvent, she sought recompense from her own insurance carrier, State Farm Mutual Insurance Company, under the uninsured motorist coverage provision of her policy. State Farm took the position that no final decision had been made concerning Safeguard's insolvency and that they were "unable to consider any payments under U. M." Appellant then filed a "petition to compel arbitration and to appoint arbitrators,"[3] alleging that "a controversy has arisen between

2. The present determination of insolvency is not the first time Safeguard Insurance Company has come to the attention of the Department of Insurance and the judicial system. In April, 1967, the company was suspended from doing business by order of the Insurance Commissioner. The suspension was overturned. See *Commonwealth v. Safeguard*, 91 Dauphin County R. 305 (Dauphin County Court sitting at Commonwealth Docket, 1970).

Following the filing of a quarterly statement with the Insurance Department in June, 1973, the department again determined that the company was insolvent. The Insurance Commissioner suspended the company and petitioned the Commonwealth Court for its liquidation. That court found that the company was neither insolvent nor in a hazardous financial condition and overturned the suspension order. See *Commonwealth Insurance Commissioner v. Safeguard Mutual Insurance Company*, 18 Pa.Cmwlth. 195, 336 A.2d 674 (1975). The Insurance Commissioner appealed to the Supreme Court which also determined Safeguard to be solvent. Opinion by O'Brien, J. (now Chief Justice), Jones, J. former Chief Justice did not participate, Pomeroy, Nix and Manderino, JJ. concurred in the result, Roberts, J. filed a dissenting opinion in which Eagen, C.J. joined. See *Commonwealth of Pennsylvania v. Safeguard Mutual Insurance Company*, 478 Pa. 592, 387 A.2d 647 (1978).

3. Appellant's petition to compel arbitration was filed under the Act of April 25, 1927, P.L. 381, No. 248, 5 P.S. § 161 et seq. This Act was repealed by the Uniform Arbitration Act, Act of October 5, 1980, P.L. 693, No. 142, 42 Pa. C.S.A. § 7301, et seq. which now governs arbitration proceedings. A claim for work-loss benefits under the Pennsylvania No-Fault Insurance Act may not be commenced by a petition and rule, and must be started by the filing of either a summons or complaint. *Floczak v. Nationwide Mutual Insurance*

the parties as to whether the defendant [State Farm Mutual Insurance Company] is to pay under said policy as defendant has refused to pay under U. M. coverage." The court below entered an order discharging the rule to show cause why State Farm should not proceed to arbitration on the grounds that Safeguard Mutual Insurance Company had not been determined to be insolvent by a court of competent jurisdiction. Patricia Henderson, the petitioner in the court below, has appealed to this court.

The question for our determination is whether the issue of Safeguard Mutual Insurance Company's insolvency, within the meaning of the uninsured motorist coverage of the policy issued to appellant by State Farm Mutual, should be referred to arbitration. Appellee admits that once "the insolvency of Safeguard Mutual Insurance Company has been judicially determined, then it is clear that the uninsured motorist provision would be applicable and an arbitrator should be appointed under the Pennsylvania Arbitration Act of 1927 as per the policy provisions." The court below, and appellee have added a qualifying clause to the provision of the insurance policy which triggers uninsured motorist coverage when "the insurance company denies coverage or is or becomes insolvent." The court below required that the issue of insolvency be determined by a court of competent jurisdiction and found that since only the Insurance Commissioner had declared Safeguard insolvent, and not a court of competent jurisdiction, that it had not yet been determined that Safeguard was insolvent and the matter could not be referred to arbitration. The court below relied on the Pennsylvania Insurance Guaranty Association Act, Act of November 25, 1970, P.L. 716, No. 232, 40 P.S. § 1701.103(6) which states that *as used in this Act* :

> (6) "Insolvent insurer" means an insurer determined to be insolvent or in such condition that its further transaction of business will be hazardous to its policyholders, or to its creditors, or to the public by a court of competent

*Company*, 289 Pa.Super. 438, 433 A.2d 885 (1981). This case, however, does not apply to the filing of a petition to compel appointment of arbitrators in a dispute involving no-fault coverage.

jurisdiction of the insurer's domiciliary state subsequent to the date upon which the plan of operation becomes effective pursuant to subsection (c) of section 201 of this act.

■ The error that the court below made, as we perceive it, was in reading into the insurance policy the above definition of insolvency. The Pennsylvania Insurance Guaranty Act itself stated that "as used in this Act" insolvent insurer has a definite meaning. This does not mean that as used in an insurance policy the term insolvent insurance company has the same meaning. The reliance of the court below on the Pennsylvania Insurance Guaranty Association Act, *supra*, is misplaced. As pointed out in *Adler v. Huddleston*, 268 Pa.Super. 163, 166, 407 A.2d 881, 882 (1979) the Pennsylvania Insurance Guaranty Association "was legislatively created to have as its members every insurer doing business in Pennsylvania, the purpose being to cover claims presented to insolvent insurance companies..." The Act covers the relationship between an insolvent insurer and its insureds. It is not involved with the relationship between an injured party and his (or her) own insurer based on uninsured motorist coverage.

In *Gordon v. Keystone Insurance Company*, 277 Pa.Super. 198, 419 A.2d 730, 731 (1980) the policy in question provided for arbitration: " '[i]f any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages *from the owner or operator* of an uninsured motor vehicle or of an uninsured highway vehicle...' " (Emphasis in original). We held that the court below properly submitted to arbitration the question whether the insured could collect from his own company amounts in excess of the policy limits paid to the insured by the other company. This court stated at 277 Pa.Super. 199, 419 A.2d 731:

In *National Grange Mutual Insurance Company v. Kuhn*, 428 Pa. 179, 236 A.2d 758 (1968), the Supreme Court was faced with the construction of a similar clause in an insurance policy. The court found that the clause indi-

cated that arbitration was contemplated for resolution of all disputes under the uninsured motorist section, noting: "[T]he policy language is the company's and it may, if it so desires, alter that language to limit arbitration to only those issues it desires to be arbitrable, if indeed it never intended arbitration of questions other than those which it contends are arbitrable." 428 Pa. at 185–86, 236 A.2d at 761. We find *National Grange* to be controlling in the case before us.

■ If the language of a policy prepared by an insurer is ambiguous, obscure, uncertain or susceptible to more than one construction we must construe the language most strongly against the insurer and accept the construction most favorable to the insured. *Blocker v. Aetna Casualty and Surety Company*, 232 Pa.Super. 111, 332 A.2d 476 (1975). The instant policy is ambiguous as to the meaning of "insolvent" and therefore this matter must be referred to arbitration to determine if the insured is insolvent.

In the context of insurance, the Insurance Department Act of May 17, 1921, P.L. 789, 40 P.S. § 1 et seq., as amended, states that:

"Insolvency" means:

(1) For an insurer issuing only assessable fire insurance policies; (1) the inability to pay any obligation within thirty days after it becomes payable, or (ii) if an assessment be made within thirty days after such date, the inability to pay such obligation thirty days following the date specified in the first assessment notice issued after the date of loss pursuant to section 808 of the act of May 17, 1921 (P.L. 682, No. 284), known as "The Insurance Company Law of 1921."

(2) For any other insurer the inability to pay its obligations when they are due, or whose admitted assets do not exceed its liabilities plus the greater of (i) any capital and surplus required by law for its organization or (ii) its authorized and issued capital stock. For any insurer licensed to do business in the Commonwealth as of the effective date of this act which does not meet this stan-

dard, the term "insolvency" shall mean for a period not to exceed three years from the effective date of this act that it is unable to pay its obligations when they are due or that its admitted assets do not exceed its liabilities plus any required capital contribution ordered by the commissioner under the provisions of the insurance law. (40 P.S. § 221.3)

■ See also *Sheppard v. Old Heritage Mutual Insurance Company*, 492 Pa. 581, 425 A.2d 304 (1980). In this case the insurance commissioner determined that Safeguard Mutual Insurance Company was insolvent. Although Safeguard has not been declared insolvent by a "court of competent jurisdiction of the insurer's domiciliary state" that is not required to fall within the meaning of insolvency in the policy issued to appellant. We are further persuaded that the term "insolvency", in the uninsured motorist coverage provision, need not meet the standard of the Pennsylvania Insurance Guaranty Association Act since the Act requires that insolvency be determined by a court of competent jurisdiction of the insurer's "domiciliary state". An insurer could be domiciled anywhere outside of the Commonwealth of Pennsylvania. It would be unreasonable to require that an insured who has an uninsured motorist coverage as set forth in the policy in this case could not go forward to arbitration under the terms of this policy until a determination of insolvency had been made in a foreign state. The insurance carrier in the instant case prepared the contract of insurance. Had it intended to use the definition of insolvency as set forth in the Pennsylvania Insurance Guaranty Association Act it could have chosen to do so. A cardinal rule of interpretation of contracts is that the intent of the parties at the time the contract was entered into is controlling. *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3rd Cir. 1979). When the language of a contract is clear and unambiguous, the intent of the parties is to be determined only from the express language of the agreement. *Robert F. Felte, Inc. v. White*, 451 Pa. 137, 302 A.2d 347 (1973). In this case the appellee did not use unambiguous language with respect to the meaning of insolvency.

We believe that the type of dispute in this case is one that should go to arbitration. While the arbitration clause does not specifically refer to this type of dispute, arbitration should be used for all disputes under the uninsured motorist provision, including the question of whether Safeguard is insolvent within the meaning of the insurance policy.

Order reversed and case remanded to the court below so that the matter may proceed to arbitration.