442 A.2d 713

Frank WHITE, Jr., Appellant,

v.

CONCORD MUTUAL INSURANCE COMPANY and
Commercial Union Insurance Company.

Superior Court of Pennsylvania.

Argued June 25, 1981.

Filed Feb. 16, 1982.

Petition for Allowance of Appeal Granted May 6, 1982.

172

Edwin P. Smith, Philadelphia, for appellant.

James J. McCabe, Jr., Philadelphia, for appellees.

William V. Coleman, Philadelphia, for participating party.

Before CERCONE, President Judge and SPAETH, HESTER, WICKERSHAM, BROSKY, JOHNSON, POPOVICH, DiSALLE and SHERTZ, JJ.

SPAETH, Judge:

This is an appeal from an order denying a petition for the appointment of an arbitrator to decide an uninsured motorist claim. In denying the petition, the lower court held that the uninsured motorist coverage required by the Act of August 14, 1963, as amended, 40 P.S. § 2000(a), does not extend to a case where all of the automobiles involved in an accident have at least the minimum amount of liability insurance required by Pennsylvania law but where because of the number of persons injured a claimant recovers less than the minimum amount. After the appeal had been argued before a panel of this court, we ordered reargument before the court en banc. We now affirm.

1

On July 2, 1977, appellant was injured while a passenger in an automobile that was insured by the Aetna Insurance Company under a $35,000 single limit policy. The other automobile involved in the accident was insured by State Farm Mutual Insurance Company under a policy with limits of $15,000 per person and $30,000 per accident. Because other persons were injured in the accident and participated in the recovery, only $13,000 was available to appellant—$7,000 from one carrier and $6,000 from the other. Claiming that his damages exceeded $13,000, appellant filed claims under the uninsured motorist provisions of his father's and

stepmother's insurance policies, which had been issued by appellees, Concord Mutual Insurance Company and Commercial Union Insurance Company.[1] Appellees denied appellant's claims and also, each refused to appoint an arbitrator.

Appellant filed in the lower court a "Petition for the Appointment of Arbitrator Pursuant to Uninsured Motorist Coverage." This petition alleged only that appellant was insured under policies containing uninsured motorist coverage, that he had been severely injured in a motor vehicle collision, that a dispute had arisen as to whether an uninsured motorist was responsible, and that appellees had not complied with his demand for arbitration. However, the petition was accompanied by a memorandum of law, which recited the additional facts that the tortfeasors were insured but that appellant's recovery was limited to $7,000 from one insurance carrier and $6,000 from the other because of the existence of multiple claimants, and which argued that this constituted a "denial of coverage" because these amounts were less than the minimum coverage required by law. Also attached to the petition, although not specifically incorporated into it, were copies of the arbitration clauses from both appellees' policies and the definition of an "uninsured automobile" from appellee Concord Mutual's policy.

Appellee Commercial Union Insurance Company filed an answer to appellant's petition for the appointment of an arbitrator, denying that an uninsured motorist had been involved in the accident, and alleging in new matter the identities and policy limits of the insurance carriers that provided coverage to the owner of the automobile in which appellant was a passenger and to the owner of the other automobile involved in the accident.[2] This answer was also

1. Appellant claimed that he was eligible to recover under a provision of these policies extending coverage to "relatives" of the respective named insureds. Appellee Commercial Union took the position in the lower court that appellant did not qualify as a "relative" of its named insured, his stepmother. That issue has not been presented to us and we need not consider it.

2. Appellee Concord Mutual Insurance Company did not file an answer or otherwise participate in the proceedings in the lower court,

accompanied by a memorandum of law. Appellant filed a reply to Commercial Union's new matter, which again admitted that both tortfeasors had been insured while repeating the claim that the tortfeasors' insurance carriers had "denied coverage as to a portion of the applicable limits[.]"

Appellant's only argument on appeal is that the issue of whether uninsured motorist benefits are available under the facts of this case is within the scope of the arbitration clauses of appellees' policies, and that the lower court therefore erred by doing anything other than appointing an arbitrator as requested in his petition.[3]

■ As a general rule, questions under an uninsured motorist clause with an arbitration provision are within the exclusive jurisdiction of the arbitrators. *See, e.g., Preferred Risk Mut. Ins. Co. v. Martin*, 436 Pa. 374, 260 A.2d 804, *cert. denied*, 398 U.S. 905, 90 S.Ct. 1697, 26 L.Ed.2d 65 (1970); *Pennsylvania General Ins. Co. v. Barr*, 435 Pa. 456, 257 A.2d 550 (1969); *Merchants Mut. Ins. Co. v. American Arb. Ass'n*, 433 Pa. 250, 248 A.2d 842 (1969); *Harleysville Mut. Ins. Co. v. Medycki*, 431 Pa. 67, 244 A.2d 655 (1968); *National Grange Mut. Ins. Co. v. Kuhn*, 428 Pa. 179, 236 A.2d 758 (1968); *Smith v. Employers' Liability Assurance Corp., Ltd.*, 217 Pa.Superior Ct. 31, 268 A.2d 200 (1970). In some cases, however, an appellate court has decided such questions. In

and there is nothing in the lower court's record or opinion to indicate why. However, this court's docket contains a notice of an order of the Supreme Court of Pennsylvania staying all proceedings involving claims against Concord Mutual. Reargument of this case before the court en banc was delayed until after this stay was ended. Concord Mutual filed a brief and participated in the reargument without objection from any other party.

3. The dissent argues that the lower court should have considered only the averments of appellant's petition. Dissenting at 720. While this would be the proper standard in ruling on a preliminary objection in the nature of a demurrer, *Linda Coal and Supply Co. v. Tasa Coal Co.*, 416 Pa. 97, 204 A.2d 451 (1964), it is not the proper standard in ruling on a petition for the appointment of an arbitrator, for "[t]he issue of whether [a] dispute is one that is covered by the terms of the arbitration agreement is one for the court to determine," *Women's SPCA v. Savage*, 440 Pa. 34, 36, 269 A.2d 888, 890 (1970), and the court could not make such a determination based only on the averments of one party.

*United Services Auto Ass'n Appeal*, 227 Pa.Superior Ct. 508, 323 A.2d 737 (1974), we had occasion to examine these cases, and concluded that

> the rule, to which all the cases conform, is that where the application or construction of the uninsured motorist clause is at issue the dispute is within the exclusive jurisdiction of the arbitrators; the courts will take jurisdiction only where the claimant attacks a particular provision of the clause itself as being contrary to a constitutional, legislative, or administrative mandate, or against public policy, or unconscionable.

*Id.*, 227 Pa.Super. at 516, 323 A.2d at 741 (footnotes omitted).

*And see Wilbert v. Harleysville Mut. Ins. Co.*, 254 Pa.Superior Ct. 217, 220 n. 3, 385 A.2d 987, 983 n. 3 (1978).

■ Thus, in this case the lower court properly took jurisdiction if the effect of appellant's claim is to attack the uninsured motorist clauses in appellees' policies as being contrary to a constitutional, legislative, or administrative mandate.

As we have noted, appellant's petition alleged that a dispute had arisen as to whether an uninsured motorist was involved in the accident, and appellee Commercial Union's answer denied that any dispute had arisen as to whether an uninsured motorist was involved in the accident, since one of the automobiles was covered by a $35,000 single limit policy and the other by a policy with limits of $15,000 per person and $30,000 per accident. The lower court stated the issue before it as being "to what extent automobile casualty insurers writing business in Pennsylvania and thus required to afford uninsured motorist protection to their insured can be held to create a fund for settlement as to acts of an *insured* motorist where a castastrophic accident renderes *[sic]* the $15,000/$30,000 liability coverage required by the financial responsibility laws and actually maintained inadequate to compensate all victims for all losses." Slip op. at 5 (emphasis in original; footnote omitted). Reflection will disclose that the pleadings; and the lower court's under-

standing of them, as disclosed by its statement of the issue presented, bring this case within the rule of *United Services Auto Ass'n Appeal, supra.*

The definition of "uninsured automobile" in appellee Concord Mutual's policy, which was attached to appellant's petition, is taken verbatim from the regulations issued by the Insurance Commissioner.[4] In those regulations an "uninsured automobile" is defined as

> an automobile with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder[.]

31 Pa.Code § 63.2 (Exhibit C II(c)(1)).[5]

Automobiles registered in Pennsylvania are required to be covered by liability insurance with limits of at least $15,000 per person and $30,000 per accident, 40 P.S. § 1009.104. Insurance in this amount constitutes proof of financial responsibility, 75 Pa.C.S.A. § 1747. Here, it was uncontested in the pleadings before the lower court that both automobiles had insurance in at least the required amounts. It was also uncontested that the carriers had not denied the applicability of their policies. Accordingly, the lower court found that under the Commissioner's regulations, as reflected in

----

4. The definition of "uninsured automobile" in appellee Commercial Union's policy is not of record. No party has suggested that the proper disposition of this case might depend on any variation between Commercial Union's definition and the Commissioner's definition. Commercial Union's definition is contained in its brief to us, at 3; we note that there are some minor differences in wording but the substance is identical to the Commissioner's definition.

5. This definition is part of a sample policy provided by the Commissioner. The regulations note that this is "the National standard form for this insurance." 31 Pa.Code § 63.2(a).

the policies written by appellees, there was no uninsured automobile involved. (The court italicized its finding that the motorists were "insured.") The court was then faced with appellant's claim that automobiles that were "insured" according to the Commissioner's regulations were nonetheless "uninsured" according to the requirements of the statute, 40 P.S. § 2000(a). It is apparent that this claim is but another way of saying that the Commissioner's regulations are contrary to the statute. This case is therefore within the rule of *United Services Auto Ass'n Appeal,* from which it follows that the lower court properly denied the petition for appointment of an arbitrator and took jurisdiction so that it could itself decide the validity of appellant's attack on the uninsured motorist clauses in appellees' policies.

The dissent argues that the holding of the Supreme Court in *National Grange Mutual Insurance Company v. Kuhn, supra,* requires that this case be submitted to arbitration. Dissenting at 723–725. It is true that *National Grange,* in which the Supreme Court ordered arbitration, did involve a dispute as to whether a motorist was uninsured or not. However, there is no indication that that determination depended on anything but factual questions, much less that it depended on the validity of the Insurance Commissioner's definition of "uninsured automobile."

The only authority appellant cites in support of arbitration is *Mapp v. Nationwide Ins. Co.,* 268 Pa.Superior Ct. 404, 408 A.2d 850 (1979), where on facts similar to those in this case a panel of this court held that the lower court's refusal to appoint an arbitrator was error. The same result has since been reached by two other cases, *Gordon v. Keystone Insurance Company,* 277 Pa.Superior Ct. 198, 419 A.2d 730 (1980); *Hart v. State Farm Ins. Co.,* 288 Pa.Superior Ct. 53, 431 A.2d 283 (1981). However, *Mapp* was wrongly decided, and we now overrule it, and, with it, *Gordon* and *Hart.*

*Mapp* contains no analysis and cites only three cases: *Runewicz v. Keystone Ins. Co.,* 476 Pa. 456, 383 A.2d 189 (1978); *Grange Mutual Casualty Co. v. Pennsylvania Manufacturers Association Insurance Co.,* 438 Pa. 95, 263 A.2d 732

(1970); and *Gallagher v. Educator and Executive Insurers, Inc.*, 252 Pa.Superior Ct. 414, 381 A.2d 986 (1977). These cases are distinguishable.[6]

In *Runewicz*, where the underlying issue was basically the same as in this case, the insurance company proceeded to arbitration without objection, in contrast to this case, where the insurance companies have refused to arbitrate. The Supreme Court sustained the arbitrators' award on the grounds that judicial review of common law arbitration is extremely narrow and the insurance company had not made the required "showing of denial of a hearing or fraud, misconduct, corruption, or similar irregularity leading to an unjust, inequitable or unconscionable award." 476 Pa. at 461, 383 A.2d at 192. The majority did not reach the issue of whether the policy definition of "uninsured automobile" was a matter that the parties were required to submit to arbitration. This procedural difference from the present case is critical. For although "[t]he issue of whether [a] dispute is one that is covered by the terms of the arbitration agreement is one for the court to determine," *Women's SPCA v. Savage*, 440 Pa. 34, 36, 269 A.2d 888, 890 (1970), a party that proceeds to arbitration without objecting that the matter at issue is outside the arbitration agreement waives that objection. *Cf., Rosenbaum v. Drucker*, 346 Pa. 434, 31 A.2d 117 (1943); *Britex Waste Co. v. Nathan Schwab & Sons*, 139 Pa.Superior Ct. 474, 12 A.2d 473 (1940). Thus, when the insurance company in *Runewicz* proceeded to arbitration without objection it bound itself to accept the arbitrators' result subject only to the extremely narrow judicial review of common law arbitration.

In *Grange Mutual* the "other" automobile's insurance company disclaimed coverage on the ground that the driver had not obtained the insured's permission to use it. In

**6.** Also, it appears that *Mapp, Gordon* and *Hart* were contrary to *Harmer v. State Farm Mutual Insurance Co.*, 238 Pa.Superior Ct. 773, 357 A.2d 224 (1976), which affirmed without opinion an order refusing to order arbitration in a case similar to this one. *See Safeco Insurance Co. of America v. Wetherill*, 622 F.2d 685, 690 (3d Cir. 1980).

response to an action by the victim's insurance company seeking a declaratory judgment that the driver was covered, and therefore was not "uninsured," the court ordered arbitration of the purely factual issue of whether that driver had the insured's permission.

Finally, in *Gallagher* the insured appealed an award in the insurance company's favor on the ground that the arbitrators might have relied on exclusionary language in the policy, which she claimed was invalid under Pennsylvania law. This court upheld the award, noting that the insurance company had raised other defenses, and finding no evidence that the arbitrators had relied on the exclusion.

2

■ We have already referred to the statute requiring uninsured motorist coverage. The statute provides:

No motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto in limits for bodily injury or death as are fixed from time to time by the General Assembly in section 1421 of article XIV of "The Vehicle Code," act of April 29, 1959 (P.L. 58), under provisions approved by the Insurance Commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of *uninsured motor vehicles* because of bodily injury, sickness or disease, including death resulting therefrom[.]

Act of August 14, 1963, P.L. 909, as amended, 40 P.S. § 2000(a) (emphasis added).

The statute does not itself define "uninsured." However, the statute requires the Insurance Commissioner to pass on the uninsured motorist provisions of automobile insurance policies, and we have already quoted the Commissioner's regulation defining "uninsured automobile." We agree with

the lower court that under this definition, no uninsured automobile was involved in the accident in which appellant was injured.

Appellant points out that because other persons were injured in the accident there was less than $15,000 in coverage available to him from each policy. It may be granted that because of this fact, appellant did not *recover* an amount equal to the minimum amount of coverage required by Pennsylvania law. Thus it may be said that as to appellant, the automobiles involved in the accident were "underinsured," or "partially" or "inadequately" insured. However, it does not follow that therefore the automobiles were "uninsured."

On its face, "uninsured" cannot mean "underinsured" or "partially" or "inadequately" insured. If understood as a layman would understand the terms, "uninsured" means "*no* insurance," while "underinsured" means "*some* insurance but *not enough.*"

To be sure, this common sense conclusion is not dispositive of appellant's argument. "Uninsured" is a term of art, which, when used in its technical sense, may have a meaning not anticipated by one unfamiliar with the insurance business. However, looking to the Insurance Commissioner's regulations does not help appellant. For as we have already seen, the Commissioner has defined "uninsured automobile" not as appellant would, exclusively in terms of a claimant's recovery, but rather according to whether the automobile did or did not have the minimum insurance coverage required by law. By that definition, the automobiles involved in the accident in which appellant was injured were not "uninsured."

■ In applying the Commissioner's regulations, we are bound, as we are in applying a statute, to give plain words their plain meaning. *Commonwealth v. Barnes & Tucker Co.*, 9 Pa.Comwlth. 1, 303 A.2d 544 (1973), *rev'd on other grounds*, 455 Pa. 392, 319 A.2d 871 (1974). Nothing could be plainer than the conclusion that under the regulations, the automobiles here were not "uninsured."

Of course, the Commissioner may on occasion issue a regulation that is invalid because it is "contrary to a constitutional, legislative, or administrative mandate, or against public policy, or unconscionable." *United Services Auto Ass'n Appeal, supra.* Here, however, we see no such infirmity. The legislature did not define "uninsured" in a manner inconsistent with the Commissioner's definition; instead it gave no definition at all, preferring to leave definition to the Commissioner. Since insurance is a specialized area in which the Commissioner has expert knowledge, we are bound to defer to his definition. *Feingold v. Bell of Pennsylvania,* 477 Pa. 1, 383 A.2d 791 (1977). Nothing in his definition appears to us contrary to public policy or unconscionable.

The correctness of our conclusion is confirmed by the fact that the argument appellant makes to us has been made before, and has been almost universally rejected. In *Travelers Ins. Co. v. Bouzer,* 39 Cal.App.3d 992, 114 Cal.Rptr. 651 (1974), the court held that to allow recovery under an "uninsured motorist" policy where the motorist is insured up to the minimum amount required by law would convert "uninsured motorist" insurance into excess accident insurance.

> This is not the coverage for which the insured paid a premium, nor would it conform to any rational public policy. We hesitate to contemplate what premiums insured motorists would have to pay for this coverage should this court declare that to be the proper interpretation of legislative intent.

*Id.* at 995, 114 Cal.Rptr. at 652–53.

This language has recently been quoted with approval by the Supreme Court of New Jersey. *Gorton v. Reliance Ins. Co.,* 77 N.J. 563, 575, 391 A.2d 1219, 1225 (1978). The courts in many other states have reached the same result. *E.g., Simonette v. Great American Ins. Co.,* 165 Conn. 466, 338 A.2d 453 (1973); *Smiley v. Estate of Toney,* 44 Ill.2d 127, 254 N.E.2d 440 (1969); *Kemp v. Fidelity & Casualty Co. of New York,* 512 S.W.2d 688 (Tex.1974); *Strunk v. State Farm*

*Mut. Auto. Ins. Co.*, 90 Wash.2d 210, 580 P.2d 622 (1978). The contrary position, as exemplified by *Porter v. Empire Fire & Marine Ins. Co.*, 106 Ariz. 274, 475 P.2d 258, *modified on other grounds*, 106 Ariz. 345, 476 P.2d 155 (1970), has been considered and expressly rejected. *E.g., Criterion Insurance Co. v. Anderson*, 347 So.2d 384 (Ala.1977); *Travelers Ins. Co. v. Bouzer, supra* ; *Golphin v. Home Indemnity Co.*, 284 So.2d 442 (Fla.Dist.Ct.App.1973). *See also,* Widiss, *A Guide to Uninsured Motorist Coverage* § 2.35A (1980 Supp.) (collecting cases).

It is true, as many of the cases cited above have observed, that a result of our conclusion is that an injured party may be less well off than he would have been if there had been an automobile involved in the accident that had no insurance at all. However, many carriers offer underinsurance coverage as a separate form of coverage that an insured may elect to purchase. In any event, anomaly or not, the result is compelled by a valid and unambiguous regulation, issued pursuant to statute. A different result can be achieved only through legislation. Some of the cases cited above have suggested that the uninsured motorist statute in question might be amended to provide coverage where the policy involved, although satisfying the financial responsibility law, is not sufficient to provide full compensation to the injured party.[7] It has also been suggested that the present minimum amount of coverage required might be increased. These suggestions, however, are not for us to consider but for the Legislature.

Affirmed.

SHERTZ, J., files a dissenting opinion in which CERCONE, President Judge, joins.

7. Several states, including Washington, Florida, and Louisiana, have amended their statutes to include such "underinsured" motorists. *See* Widiss, *supra* at §§ 2.38–2.39 (1980 Supp.). This action, it may be noted, further supports the conclusion that these and similar statutes (including Pennsylvania's) may not be read to include "underinsured" automobile unless they do so expressly.

184

The decision in this case was rendered prior to the expiration of Judges SHERTZ and DiSALLE's commission on the Superior Court of Pennsylvania.

SHERTZ, Judge, dissenting:

Appellant's petition for appointment of an arbitrator averred that he "is an insured under policies of insurance issued by respondents", that he "was severely injured in a motor vehicle collision on July 2, 1977", and that "disputes have arisen with regard to whether or not an uninsured motorist was involved in said collision and whether said uninsured motorist caused injuries to the petitioner".[1] Appellee, Commercial, answered Appellant's petition by denying that an uninsured motorist was involved in the accident.[2] These are the only allegations which the court below should have considered, and they are the only allegations which this Court should consider in determining whether the court below properly denied Appellant's petition to compel arbitration.

Properly perceived, the instant case involves a single, rather simple issue: whether a trial court must appoint an arbitrator where a party avers that (1) he is insured under automobile liability policies containing uninsured motorist clauses which provide for arbitration of disputes arising thereunder; (2) he was injured in an automobile accident and a dispute has arisen between him and his insurers as to whether his injuries were caused by an uninsured motorist; and (3) despite a demand for arbitration by the insured, the insurance carriers deny that an uninsured motorist was involved and therefore refuse to arbitrate. In view of the issue, and the pertinent allegations as set forth above, I conclude that the court below erred in denying Appellant's petition.

1. Attached to Appellant's petition were the arbitration provisions of both the Concord Mutual Insurance Company (hereinafter "Concord") and Commercial Union Insurance Company (hereinafter "Commercial") policies, which will be discussed *infra*.

2. Contrary to the majority's assertion, I do not suggest "that the lower court should have considered only the averments of Appellant's position." At 715, note 3.

The court below candidly acknowledges that "on the face of it Petitioner's demand for arbitration seems justified since by their terms the insurance issues involved seem to fall within the class or (sic) questions arbitrable under both policies". T.C. Slip Op. at 5. Nevertheless, the court "refused to refer this dispute to arbitration and directly resolved the substantive issue of coverage". *Id.* at 12. Why? What compelling considerations mandated such an extraordinary result?

In justification and explanation of its conclusion, the lower court pronounces that it discovered, apparently lurking behind "the face of Petitioner's demand for arbitration", an issue which it considered "important and novel and one of pure law", to wit:

> to what extent automobile casualty insurers writing business in Pennsylvania and thus required to afford uninsured motorist protection to their insured can be held to create a fund for settlement as to acts of an *insured* motorist where a catastrophic accident renderes (sic) the $15,000/30,000 liability coverage required by the financial responsibility laws and actually maintained inadequate to compensate all victims for all losses.

*Id.* at 5. The court further opines that the novelty and importance of this issue is such that:

> [J]ustice and certainty require [it] to be adjudicated uniformly by the Courts of Pennsylvania, not decided privately by numerous ad hoc arbitration panels subject only to the most limited scope of judicial review.

*Id.* at 5.

The majority, in affirming the trial court, also casts aside the issue posed by Appellant's petition and substitutes, in its stead, one it would rather address. The majority frankly concedes that Appellant's petition "alleged only that appellant was insured under policies containing uninsured motorist coverage, that he had been severely injured in a motor vehicle collision, that a dispute had arisen as to whether an uninsured motorist was responsible, and that appellees had not complied with his demand for arbitration." At 714.

The majority proceeds, however, to discuss "additional facts" set forth in Appellant's *memorandum of law* and subsequent pleadings, *Id.* at 714–715; impermissibly considers the policy definition of "uninsured automobile" and the Insurance Commissioner's regulations relating thereto, *Id.* at 716; approves the lower court's impermissible threshold determination that "no uninsured automobile (was) involved", *Id.* at 716; reasons therefrom that "it is apparent" that Appellant's claim "is but another way of saying that the Commissioner's regulations are contrary to the statute", *Id.* at 717; and concludes thereby that this case is within the rule which allows courts to assume jurisdiction "only where the claimant attacks a particular provision of the [uninsured motorist] clause itself as being contrary to a ... legislative ... mandate...". *United Services Automobile Association Appeal*, 227 Pa.Super.Ct. 508, 516, 323 A.2d 737, 741 (1974).

The exegetic alchemy, engaged in by both the lower court and the majority, was necessitated by their respective avowed acknowledgment of the applicable law:

> *the rule, to which all cases conform, is that where the application or construction of the uninsured motorist clause is at issue the dispute is within the exclusive jurisdiction of the arbitrators.*

*Id.*, 227 Pa.Super. at 516, 323 A.2d at 741 (emphasis added). Absent the transformations effected by the majority and the lower court, the issue posed by the "pleadings" is whether Appellant had been involved in an accident with, and had been injured by, *an uninsured motorist.*[3] This is an issue which involves the application or construction of the uninsured motorist clause and is therefore within the exclusive

---

**3.** This question, contrary to the characterization of the lower court, is neither novel nor one of pure law. *Grange Mutual Casualty Company v. Pennsylvania Manufacturers' Association Insurance Company*, 438 Pa. 95, 263 A.2d 732 (1970); *National Grange Mutual Insurance Company v. Kuhn*, 428 Pa. 179, 236 A.2d 758 (1968); *Hart v. State Farm Mutual Automobile Insurance Company*, 288 Pa.Super.Ct. 53, 431 A.2d 283 (1981); *Gordon v. Keystone Insurance Company*, 277 Pa.Super.Ct. 198, 419 A.2d 730 (1980); *Mapp v. Nationwide Insurance Company*, 268 Pa.Super.Ct. 404, 408 A.2d 850 (1979).

jurisdiction of the arbitrators. *United Services, supra.* Since the lower court's conclusion is to the contrary and the majority affirms, I dissent.

The court below, relying upon *Harleysville Mutual Casualty Company v. Blumling,* 429 Pa. 389, 241 A.2d 112 (1968) and *Wilbert v. Harleysville Mutual Insurance Company,* 254 Pa.Super.Ct. 217, 385 A.2d 987 (1978), determined that it had authority to "reserve" the issue, as articulated by the court, from "an otherwise broadside reference of uninsured motorist issues to arbitrators." T.C. Slip Op. at 6. The majority relies on *United Services, supra,* as well as on *Wilbert,* in support of its conclusion that the court, rather than arbitrators, had jurisdiction. None of these cases supports the foregoing conclusions.

In *Blumling,* the insurer brought a declaratory judgment action which sought, in part, to determine that the tortfeasor who caused Blumling's injury was not an uninsured motorist. As to this issue, as is apparent from the Opinion of the Court, written by Mr. Justice (now Chief Justice) O'Brien, and as subsequently expressly noted by the Chief Justice in *Harleysville Mutual Insurance Company v. Medycki,* 431 Pa. 67, 71, 244 A.2d 655, 657 (1968): *"No question was raised as to the arbitrability of the issue."* (emphasis added).[4]

In *Wilbert,* the insured petitioned for declaratory judgment, arguing that an exclusion in the uninsured motorist clause "was in violation of the Uninsured Motorist Act and the rules and regulations adopted and promulgated by the Insurance Commissioner pursuant to the Act." *Id.,* 254 Pa.Super.Ct. at 220, 385 A.2d at 989. It was this contention which caused this Court to note:

Generally, a case turning on the application or construction of an uninsured motorist clause is within the exclusive jurisdiction of the arbitration system. (Citation omit-

---

4. The second contention raised in *Blumling,* that the "other insurance" provision in the uninsured motorist clause "violates the intendment of the uninsured motorist law" *Blumling, supra,* 429 Pa. at 393, 241 A.2d at 114, was clearly within the jurisdiction of the court. *United Services, supra.*

ted.) However, the lower court's adjudication of necessity reached [as ours must reach] Appellees' claim that a particular provision of the clause is contrary to a constitutional, legislative, or administrative mandate. For this reason the case was properly before the lower court. *Id.,* 254 Pa.Super. at 220, n.3, 385 A.2d at 989, n.3.

In *United Services,* the insured appellees sustained personal injuries when an unknown motorist swerved his car in front of theirs, causing them to hit a third car. Appellees submitted their case to arbitration on the theory that the unknown motorist's vehicle was a "hit-and-run" car. Since there was no allegation of any contact between appellees' car and the swerving car, and since the insurance policy defined a "hit-and-run" car as one causing injury "arising out of physical contact", the arbitrators found in favor of the insurance company. Appellees' petition to vacate the award was granted by the lower court and the insurance company appealed, challenging, inter alia, the jurisdiction of the court below. This Court, in affirming, articulated the rule relied upon herein by the majority, noting, however, that appellees had *alleged* that one of the policy's terms offended a mandate of the state legislature; appellees "attacked the 'physical contact' requirement in appellant's policy as being repugnant to the Uninsured Motorist Coverage Act". *Id.,* 227 Pa.Super.Ct. at 511, 517, 323 A.2d at 739, 741. No similar allegations have been made in the case at bar.

The instant case differs from *Blumling* in that arbitrability has been raised as an issue, and it differs from *Blumling, Wilbert* and *United Services* in that *none of the parties has attacked the uninsured motorist clauses of Appellees' policies as being contrary to a legislative or administrative mandate.* Rather, as averred in Appellant's petition, the dispute between Appellant and Appellees is whether the tortfeasor, who caused Appellant's injuries, was an "uninsured motorist". The validity of Appellant's averment is borne out by the pleadings, the briefs filed and the oral arguments presented by the parties. Appellant contends that the tortfeasor who caused Appellant's injuries was an

"uninsured motorist," and Appellees contend that he was not. As has already been noted, and as will be illustrated in the discussion below, such a dispute may neither be considered nor resolved by the courts, but is within the exclusive jurisdiction of the arbitrators where, as here, the parties have agreed to arbitrate disputes arising under the uninsured motorist coverage.[5] *Harleysville Mutual Insurance Company v. Medycki*, 431 Pa. at 69, 244 A.2d at 656.

In reaching its contrary conclusion, the majority overrules three prior decisions of this Court, *Hart v. State Farm Mutual Automobile Insurance Company*, 288 Pa.Super.Ct. 53, 431 A.2d 283 (1981); *Gordon v. Keystone Insurance Company*, 277 Pa.Super.Ct. 198, 419 A.2d 730 (1980) and *Mapp v. Nationwide Insurance Company*, 268 Pa.Super.Ct.

**5.** The Concord Mutual policy provides for arbitration, *inter alia*, as follows:

> Damages for Bodily Injury Caused by Uninsured Automobiles: The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury", sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided, *for the purposes of this endorsement, determination as to whether the insured or such representative is legally entitled to recover such damages, . . . shall be made by . . . arbitration.*
>
> . . . .
>
> If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile . . . then either party may, upon written demand of either, select a competent and disinterested arbitrator. The two arbitrators so named shall select a third arbitrator or if unable to agree thereon within 90 days, then either party may make application to a judge of a court of record in the county and state in which such arbitration is pending for appointment of a third arbitrator. *The arbitrators shall then hear and determine the question or questions so in dispute,* . . . (emphasis added)

The Commercial policy, to the extent it is reproduced in the record, provides for arbitration, *inter alia*, as follows:

> If we and a covered person disagree whether that person is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle or do not agree as to the amount of damages, *either party may make a written demand for arbitration.* (emphasis added.)

404, 408 A.2d 850 (1979); holding that *Hart* and *Gordon* relied on *Mapp* and that *Mapp* was wrongly decided. At 717. The majority's analysis of *Mapp* seeks to distinguish the cases on which it relied. As to one of those cases, *Grange Mutual Casualty Company v. Pennsylvania Manufacturers' Association Insurance Company,* 438 Pa. 95, 263 A.2d 732 (1970), the majority takes refuge in a non-existent distinction.

The majority characterizes *Grange Mutual* as a case wherein our Supreme Court "ordered arbitration of the purely factual issue of whether that driver (of the 'other' automobile) had the insured's permission" to drive the automobile in question. I believe this is a mischaracterization. In *Grange Mutual,* one Oren E. Parker was injured by an automobile owned by J. R. VanAken and operated by F. D. Whitt, Jr. Appellant, Pennsylvania Manufacturers' Association Insurance Company, (P.M.A.) insured VanAken and appellee, Grange Mutual, insured Parker under a policy containing uninsured motorist coverage. Parker made claim against P.M.A., which disclaimed coverage on the ground that Whitt did not have VanAken's permission to operate the car. Parker then demanded arbitration in connection with his claim against his own carrier, Grange Mutual, for uninsured motorist benefits. Grange Mutual thereupon filed a petition for declaratory judgment to have the court declare that Whitt was not an uninsured motorist within the meaning of its policy. P.M.A. filed preliminary objections, raising a question of jurisdiction, which the lower court dismissed. On appeal, the Supreme Court reversed, holding that the issues were matters for arbitration and not for a declaratory judgment proceeding in the courts.

Although the Supreme Court did point out that the jurisdictional question involved an issue of fact, it did not merely order arbitration of that factual issue, as the majority herein asserts. Rather, it concluded that all the issues were for arbitration and *it dismissed the petition for declaratory judgment.* That the presence of an issue of fact was not a dispositive consideration is demonstrated by the Court's cita-

tion of *Allstate Insurance Company v. Taylor*, 434 Pa. 21, 252 A.2d 618 (1969).

In *Allstate*, the insurance carrier appellee had denied uninsured motorist coverage to appellant because it contended he was not a resident of his father's household and therefore not an "insured" under the policy. When appellant sought to have the dispute arbitrated, Allstate filed a petition for declaratory judgment. *All of the facts necessary for a determination of appellant's status were developed in testimony before the court below. Id.,* 434 Pa. at 22, 252 A.2d at 619. Nevertheless, in reversing the lower court's decree holding that appellant was not a resident of his father's household, the Supreme Court held that "(t)he dispute between the parties, having arisen under the uninsured motorist provisions of the policy, should have been settled by arbitration". *Id.,* 434 Pa. at 22, 252 A.2d 619.

The foregoing analyses of *Grange Mutual* and *Allstate* are especially significant in connection with the majority's very brief and somewhat cryptic attempt to distinguish *National Grange Mutual Insurance Company v. Kuhn,* 428 Pa. 179, 236 A.2d 758 (1968). The very brevity of the majority's discussion, as compared with its painstaking analysis of *Mapp,* is instructive and particularly noteworthy inasmuch as both *Hart* and *Gordon,* as well as numerous other cases decided by the Supreme Court and this Court,[6] have relied upon *National Grange.* Acknowledging that in *National Grange* the Supreme Court ordered arbitration where the

6. *Allstate Insurance Co. v. McMonagle,* 449 Pa. 362, 296 A.2d 738 (1972); *Preferred Risk Mutual Ins. Co. v. Martin,* 436 Pa. 374, 260 A.2d 804 (1970); *Great American Insurance Co. v. American Arbitration Ass'n,* 436 Pa. 370, 260 A.2d 769 (1970); *Allstate Ins. Co. v. Taylor,* 434 Pa. 21, 252 A.2d 618 (1969); *Merchants Mutual Insurance Co. v. American Arbitration Ass'n,* 433 Pa. 250, 248 A.2d 842 (1969); *Harleysville Mut. Ins. Co. v. Medycki,* 431 Pa. 67, 244 A.2d 655 (1968); *Hart v. State Farm Mut. Auto. Ins. Co.,* 288 Pa.Super.Ct. 53, 431 A.2d 283 (1981); *Gordon v. Keystone Ins. Co.,* 277 Pa.Super.Ct. 198, 419 A.2d 730 (1980); *Sudders v. United National Insurance Co.,* 217 Pa.Super.Ct. 196, 269 A.2d 370 (1970); *Smith v. Employers' Liability Assurance Corp.,* 217 Pa.Super.Ct. 31, 268 A.2d 200 (1970); *Bankes v. State Farm Mutual Auto. Ins. Co.,* 216 Pa.Super.Ct. 162, 264 A.2d 197 (1970).

dispute was whether a motorist was insured or not, the majority states: "However, there is no indication that that determination depended on anything but factual questions." At 717. The converse, of course, is equally true; there is no indication that the determination did depend on the resolution of factual questions. Neither statement, however, is pertinent since, as *Allstate* demonstrates, courts may *not* assume jurisdiction simply because the operative facts have been brought to its attention.

In *National Grange*, Kuhn, a passenger in a vehicle operated by an insured of National Grange, was injured as the result of a collision with an automobile operated by one Doyle. Kuhn demanded arbitration, in accordance with the policy provisions,[7] in order to obtain uninsured motorist benefits. National Grange thereupon filed a complaint in equity seeking to enjoin arbitration "*on the theory that the issue of whether Doyle was, in fact, an uninsured motorist is not an arbitrable issue within the terms of the insurance policy.*" *Id.* 428 Pa. at 181, 236 A.2d at 758. (emphasis added) In reversing the preliminary injunction granted by the lower court, our Supreme Court stated:

7. The arbitration clause in the *National Grange* policy provided for arbitration, inter alia, as follows:

Protection Against UNINSURED MOTORISTS COVERAGE The Company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; *provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages . . . shall be made . . . by arbitration.*

. . . .

Arbitration If any person making claim under the Uninsured Motorists Coverage and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured highway vehicle because of the bodily injury to the insured, or do not agree as to the amount of payment which may be owing thereunder, then, upon written demand of either, *the matter or matters upon which such person and the company do not agree shall be settled by arbitration* in accordance with the rules of the American Arbitration Association, . . . *Id.,* 428 Pa. at 182, 236 A.2d at 759. (emphasis added)

[C]ourt proceedings should not be read into the agreement to arbitrate. We believe that the policy language express- es the agreement of the parties to submit the "matter or matters" in dispute between them, relative to the protec- tion against uninsured motorists provision of the policy, to determination by arbitration. *The arbitration clause, in our view, indicates that the parties contemplated one method, and one method only, for the resolution of dis- putes under this coverage. That method was arbitration and all such disputes should be so decided.*

*Id.* 428 Pa. at 185, 236 A.2d at 760–761 (emphasis added).

The arbitration provisions in the Concord policy are indis- tinguishable from those in the National Grange policy.[8] Although the arbitration provision in the Commercial policy is somewhat different, the operative language expressly provides for arbitration where the parties disagree whether the insured "is legally entitled to recover damages from the owner or operator of an uninsured automobile." Conse- quently, whether the operator of the other vehicle was an "uninsured motorist", is an arbitrable issue.[9]

The majority errs, in my opinion, because it reaches a conclusion which follows syllogistically from an *erroneous premise*: that courts may assume jurisdiction in a case arising under an uninsured motorist clause merely because the insurer opposes arbitration on the ground that one of the requisite elements for invoking the uninsured motorist cov- erage is missing. In order to test the validity of this premise, it is necessary to refer to the coverage provision.

8. The Concord arbitration clause provides that the "arbitrators shall . . . hear and determine the *question or questions* so in dispute." (emphasis added) The phrase in the National Grange policy, "*matter or matters* upon which such person and the company do not agree", (emphasis added), is certainly no more inclusive and is virtually identical language. *Hart v. State Farm Mutual Automobile Ins. Co.*, 288 Pa.Super.Ct. at 58, 431 A.2d at 286.

9. It is significant that in distinguishing *National Grange*, Commercial does not argue that its arbitration clause is less inclusive than the arbitration clause in *National Grange*. Rather Commercial Union argues only that the issues in *National Grange* involved relatively minor legal issues or mixed questions of law and fact.

> The company will pay all sums which the *insured* or his *legal representative* shall be *legally entitled to recover* as damages from the *owner or operator* of an *uninsured highway vehicle* because of *bodily injury* . . . sustained by the insured, *caused by accident* and *arising out of the ownership, maintenance or use of such uninsured automobile* ; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages . . . shall be made . . . by arbitration. (emphasis added)

*See* n.5, *supra.*

In the instant case, the insurers have targeted the "uninsured automobile" requirement; they contend this element is lacking, in that the tortfeasor's automobile was insured, and they argue, therefore, that there is nothing to arbitrate. The majority agrees, despite the fact that such reasoning defies both law and logic. It necessitates a threshold determination [10] that the tortfeasor's automobile was insured, even though the law is clear that such a determination is within the exclusive jurisdiction of arbitrators. Moreover, in sanctioning such reasoning, this Court permits the insurance carrier to unilaterally abrogate arbitration as the means of dispute resolution in virtually all uninsured motorist claims.[11]

Suppose, for example, that upon being presented with a claim arising under the uninsured motorist coverage, an insurance carrier denies the claim and, in support of its position, targets one of the other required elements. The carrier might aver: (1) that the claimant is not an *insured* (as in fact alleged by Commercial in the instant case); (2) that the claimant is not the *legal representative* of the insured; (3) that the claimant is not *legally entitled to*

10. It is immaterial whether this determination derives from facts which are admitted or are in dispute.

11. The majority's decision is contra the general policy favoring arbitration of contractual differences. *Waddell v. Shriber*, 465 Pa. 20, 348 A.2d 96 (1975); *Mendelson v. Shrager*, 432 Pa. 383, 248 A.2d 234 (1968). *See Hart v. State Farm Mutual Auto. Ins. Co., supra; Wolf v. Baltimore*, 250 Pa.Super.Ct. 230, 378 A.2d 911 (1977).

*recover* damages; (4) that the party responsible was neither the *owner nor operator* of an uninsured automobile; (5) that the claimant did not sustain *bodily injury*; (6) that the bodily injury was not *caused by accident*; or (7) that the accident did not *arise out of the ownership, maintenance or use* of the uninsured automobile.[12]

In each such instance, under the view urged by Appellees, adopted by the lower court and affirmed by the majority, the court would consider and decide the threshold "missing element" issue interposed by the insurance carrier in response to a Petition seeking to compel arbitration. If the court concluded that the carrier's contention was meritorious, the Petition would be denied.[13] This result not only flies in the face of precedent,[14] but it permits an insurance carrier, by the mere introduction of an issue as yet premature, to evade its contractual undertaking to submit uninsured motorist disputes to arbitration. This despite the fact that our appellate courts have affirmed and reaffirmed that all disputes arising under the uninsured motorist coverage are covered by the arbitration agreement. *Allstate Insurance Co. v. McMonagle*, 449 Pa. 362, 296 A.2d 738 (1972);

12. The examples cited in the text constitute an extensive, but less than exhaustive, list of contentions which can be raised by insurers under the rationale employed by the majority. Each involves an element essential to the application of the uninsured motorist clause and is, therefore, for the arbitrators. *United Services Automobile Ass'n Appeal*, 227 Pa.Super.Ct. 508, 323 A.2d 737.

13. In the instant case, the majority, after reviewing the insurance policies, the pleadings and the briefs, concludes that the driver of the "other" vehicle was not an "uninsured motorist" *as defined in the policies.* Only after reaching that conclusion is the majority able to postulate that Appellant's petition was based on a challenge to the validity of the uninsured motorist clause in his insurance policy and, therefore, within the jurisdiction of the court. Such reasoning cannot justify judicial usurpation of the arbitrator's jurisdiction.

14. *Miller v. Allstate Insurance Company*, 238 F.Supp. 565 (1965); *Gordon v. Keystone Insurance Company*, 277 Pa.Super.Ct. 198, 419 A.2d 730 (1980); *Grange Mutual Casualty Company v. Pennsylvania Manufacturers Association Insurance Company*, 438 Pa. 95, 263 A.2d 732 (1970); *Harleysville Mutual Insurance Company v. Medycki*, 431 Pa. 67, 244 A.2d 655 (1968); *Henderson v. State Farm Mutual Insurance Co.*, 292 Pa.Super.Ct. 333, 437 A.2d 411, (1981).

*Pennsylvania General Insurance Co. v. Barr*, 435 Pa. 456, 257 A.2d 550 (1969); *Harleysville Mutual Insurance Co. v. Medycki, supra* 431 Pa. at 69, 244 A.2d at 656; *Henderson v. State Farm Mutual Insurance Co., supra; Hartford Insurance Group v. Kassler*, 227 Pa.Super.Ct. 47, 324 A.2d 521 (1974).[15] In *Medycki*, our Supreme Court stated:

> It is an oversimplification to assert that the denial of coverage by appellant (insurer) ipso facto removes the uninsured motorists clause from the policy and with it the arbitration provision . . .

*Id.*, 431 Pa. at 72, 244 A.2d at 657.

There are additional compelling reasons for refusing to recognize an exception, such as created by the court below and approved by the majority, to the principle that all disputes which arise under an uninsured motorist clause must be arbitrated where the application or construction thereof is at issue. First, such an exception constitutes an unwarranted and impermissible judicial rewriting of the insurance contract inasmuch as the parties have indicated, by the inclusion of an arbitration clause, that they contemplated one method, and one method only, arbitration, for the resolution of disputes under this coverage. *National Grange Mutual Insurance Co. v. Kuhn*, 428 Pa. at 185, 236 A.2d at 761 (1968). Second, whereas arbitration spares the courts the burden of much unnecessary litigation, *United Services*, 227 Pa.Super.Ct. at 515 n.6, 323 A.2d at 740 n.6, such an exception will open the doors to numerous challenges to arbitration, needlessly burdening already overcrowded court dockets. Finally, arbitration promotes a prompt and final resolution of litigation, a consequence which is advantageous to both the insurer and the insured. As was noted by Mr. Justice Roberts in *Runewicz v. Keystone Ins. Co.*, 476 Pa. 456, 464, 383 A.2d 189, 193 (1978), (Roberts, J., concurring):

> Arbitration is too valuable a friend of the Court to be treated so lightly. *See County of Allegheny v. Allegheny*

---

**15.** In *Hartford*, Judge Hoffman, speaking for this Court, en banc, pointed out that such cases rest "upon the exclusion, by agreement, of court proceedings as a vehicle for the resolution of disputes." *Id.* 227 Pa.Super. at 50, 324 A.2d 522.

*County Prison Employees Independent Union, supra* (Roberts J., dissenting); *Bole v. Nationwide Insurance Co.,* 475 Pa. 187, 193, 379 A.2d 1346, 1349 (1977) (Roberts, J., dissenting, joined by Nix, J.). As Mr. Chief Justice Burger has stated:

> "The notion that most people want black-robed judges, well-dressed lawyers, and fine paneled courtrooms as the setting to resolve their disputes is not correct. People with problems, like people with pains, want relief, and they want it as quickly and inexpensively as possible."

Warren Burger, "Our Vicious Legal Spiral," 16 Judges' Journal 23, 49 (Fall, 1977).

I deplore the unfounded disparagement, by the lower court,[16] of arbitrators who, usually without compensation, and always at some personal sacrifice, give of their time and expertise in order to render an important public service. There is no justifiable basis for presupposing that arbitrators will wrongly decide the question of law once it is properly placed before them. *National Grange Mutual Insurance Co. v. Kuhn, supra,* 428 Pa. at 185, 236 A.2d at 761.

Yet another factor attracted the unwarranted attention of the lower court; the limited scope of judicial review of an arbitrator's award.[17] Although this consideration, at least in part, prompted the result reached by the court below, it ought not to have. Such an assertion has been expressly rejected by the Pennsylvania Supreme Court.

> [W]e are now no more impressed by appellant's argument relative to the limited scope of review of the arbitrator's

16. "The consequences of this issue are too important . . . to permit private dispositions willy nilly and potentially without correct reference to the law as enacted by the Legislature or interpreted by the Courts."
T.C. Slip Op. at 6.

17. This clearly is an important question of pure law which justice and certainty require to be adjudicated uniformly by the Courts of Pennsylvania, not decided privately by numerous ad hoc arbitration panels subject only to the most limited scope of judicial review.
T.C. Slip Op. at 5.

award than we were when a similar argument was made in *National Grange*, supra. If arbitration is the format in which the parties have agreed to settle their dispute, then they must be content with such a settlement. *Harleysville Mutual Insurance Co. v. Medycki, supra* 431 Pa. at 72, 244 A.2d at 657.

Finally, under the majority view, insurance carriers are permitted to engage in the most egregious form of forum shopping. They may either choose to go to arbitration or, by prematurely contending that a requisite element for the invocation of uninsured motorist coverage is absent, opt in favor of judicial resolution of the dispute. Such a result is not merely undesirable; it is also unlawful since it "render(s) the parties agreement to arbitrate disputes nugatory." *Hartford Insurance Group v. Kassler*, supra. 227 Pa.Super.Ct. at 50, 324 A.2d 522.

Having concluded that the court below erred in denying the petition to compel arbitration, I deem it improper and inappropriate to consider the merits of the question whether "uninsured" means "underinsured."

I would therefore reverse the Order of the lower court and remand for the appointment of an arbitrator.