**The Sports Factory, Inc. v. Ridley Park Associates**

*Carl N. Martin, II,* for plaintiff.
*Leon H. Kline,* for defendant.

GAFNI, *J.,* January 11, 1983—This matter involves a petition to enforce subpoenas duces tecum issued by arbitrators in an ongoing common law arbitration hearing conducted pursuant to the rules of the American Arbitration Association (AAA). Petitioner, the Sports Factory, Inc., (Sports Factory), has requested that this court compel respondents to attend and produce documents at these arbitration hearings. Respondents oppose the petition.

This matter raises three issues: (1) whether this court has in personam jurisdiction over respondents (raised by the Ridley Park respondents only);[1] (2) whether this court should review the authority of the arbitrators to issue the subpoenas at this time; and (3) whether the arbitrators' subpoenas are enforceable.

## I. FACTS

Sports Factory and one of the instant respondents, Ridley Park Associates (Ridley Park) entered into a lease agreement on June 9, 1981.[2] That agreement provides, in pertinent part, that any claims or disputes "arising out of, or relating to, the lease shall be decided by arbitration in accordance with the Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise."

---

1. The Hechinger Respondents have not raised this issue and have, therefore, waived any objection to in personam jurisdiction, Slezynger v. Bischak, 224 Pa. Super. 552, 307 A.2d 405 (1973).
2. This agreement was apparently a "Second Amendment to Lease" to a contract originally executed on April 21, 1980 (Exhibit C of Hechinger respondent's brief.)

Sports Factory, as the tenant under the agreement, claims that several disputes arose. The principal dispute involves whether the premises demised to the Sports Factory had been leased previously, in January, 1981, to another tenant, the Hechinger Company of Landover, Maryland. Pursuant to the terms of the lease, Sports Factory demanded arbitration. A panel of three arbitrators was appointed to hear the matter. A hearing was scheduled for June 29, 1982.

Sports Factory requested that the arbitrators issue several subpoenas duces tecum to prepare for the hearing. The arbitrators issued the subpoenas on June 9, 1982, apparently in reliance upon Rule 31 of the AAA Commercial Arbitration Rules. Rule 31 provides in relevant part:

31. Evidence

The parties may offer such evidence as they desire and shall produce such additional evidence as the Arbitrator may deem necessary to an understanding and determination of the dispute. *The Arbitrator, when authorized by law to subpoena witnesses or documents, may do so upon the Arbitrator's own initiative or upon the request of any party . . .*

See American Arbitration Association, *Commercial Arbitration Rules* at 10-11 (as amended April 1, 1982). (Emphasis added.)

Two of the subpoenas were directed to William Chanoff and Daniel Greenberg, the general partner and the representative, respectively, of Ridley Park, with whom Sports Factory negotiated the contracts in issue. (Ridley Park respondents). In addition, four subpoenas were directed to employees of the co-tenant, the Hechinger Company. These individuals are Raymond Bradshaw, Celia Wing, Stephen E. Bachand, and the Custodian of Records of the

Hechinger Company (Hechinger respondents). Sports Factory contends that the testimony of these witnesses is necessary to establish its claims against Ridley Park.

Sports Factory served the subpoenas on all of the prospective witnesses either by mail or hand delivery. Subsequent to the service of the subpoenas, counsel to Sports Factory received letters from attorneys representing all of the witnesses which indicated that they would not obey the subpoenas.

Counsel for Ridley Park, Leon H. Kline, appeared at the hearing on June 29, 1982 with Daniel Greenberg, and stated to the arbitrators that neither Mr. Greenberg nor Mr. Chanoff would obey the subpoenas served on them. No other witness appeared.

Sports Factory thereafter filed in this court an "Application for Enforcement of American Arbitration Association Subpoenas." In support of its application, Sports Factory relied upon a notice which had appeared in the Legal Intelligencer on April 27, 1971. That notice provided:

"Enforcement of American Arbitration Association Subpoenas

Upon application to the court with a proper affidavit setting forth the fact that a witness has willfully refused to obey a subpoena of the American Arbitration Association for attendance at Arbitration hearings, which subpoena has been properly served upon said witness with a payment or proffer of the attendant witness fee, the court will take appropriate action to compel compliance with said subpoena.

Said application will be made to the Motion Court."

## II. DISCUSSION:

A. Whether This Court Has In Personam Jurisdiction Over The Ridley Park Respondents:

The Ridley Park respondents argue that this court lacks in personam jurisdiction because, inter alia, "a petition and rule may not be used to commence an action." (Brief of Ridley Park respondents at 3); and no process of the court issued and no service was made upon them after the Sports Factory filed the instant application.

The issues raised by Ridley Park relating to the manner in which in personam jurisdiction may be secured is one which is worthy of attention by this court.[3] Should this court determine that it is without jurisdiction over Ridley Park, however, it would still be faced with the issue insofar as it relates to the Hechinger respondents as they, at no point, have contested the propriety of the assertion of this court's jurisdiction over them. Should this court de-

---

3. Ridley Park correctly states that a petition and rule may not be used to commence an action. Pa. R.C.P. 1007 provides that an action may be commenced only upon filing (1) a praecipe for a writ of summons, (2) a complaint, or (3) an agreement for an amicable action. On the other hand, the Uniform Arbitration Act, 42 Pa. C.S. §7317 provides:

Except as otherwise prescribed by general rules, an application to the court under this subchapter *shall be by petition* and shall be heard in the manner and upon the notice provided or prescribed by law for the making and hearing of petitions in civil matters. Unless the parties otherwise agree, notice of an initial application for an order of court shall be served in the manner provided or prescribed by law for the service of a writ of summons in a civil action. 42 Pa.C.S. §7317 (Purdon's Pamphlet 1982) (Emphasis added).

The Pennsylvania General Assembly has recently enacted Section 7342 of the Judiciary Code which provides, inter alia, that Section 7317 shall be applicable to arbitration conducted pursuant to common law arbitration. See H. B. 1804 at p. 48 (Printer's No. 3748) which was signed into law on Dec. 20, 1982. The applicability of Section 7317 to common law arbitrations will, in future actions, clarify the form and manner of service of applications to the Court.

termine, as the Hechinger respondents argue, that common law arbitrators are without authority to issue subpoenas, whether this action was commenced in an appropriate manner against Ridley Park will, of necessity, become moot.

In light of the well-settled principle that a court should decide only those issues which are essential to a proper determination of the rights of the parties, this court will confine its inquiry to the issues of whether the court should review the authority of the arbitrators to issue subpoenas at this time and whether the arbitrators' subpoenas are enforceable at law.

## B. WHETHER THIS COURT SHOULD REVIEW THE AUTHORITY OF ARBITRATORS TO ISSUE SUBPOENAS AT THIS TIME:

No party to this matter has challenged this court's subject matter jurisdiction although the issuance of these subpoenas may be an interlocutory order. The arbitrators' decision to issue the subpoenas was preparatory to the disposition of the contract dispute between Sports Factory and Ridley Park and was comparable to orders regarding entitlement to discovery or location of an arbitration proceeding. See Harleysville Mutual Casualty Co. v. Adair, 421 Pa. 141, 218 A.2d 791 (1966); Friedman v. Friedman, 277 Pa. Super. 428, 419 A.2d 1221 (1980). The court would not, ordinarily, review an interlocutory order as it lacks the jurisdictional prerequisite of finality. See Piltzer v. Independence F.S. & L. Assn., 456 Pa. 402, 319 A.2d 677 (1974); Wilson v. Keystone Insurance Co., 289 Pa. Super. 101, 432 A.2d 1071, 1072 (1981) (final order is one which ends the litigation, or alternatively disposes of entire case).

The arbitrators' decision to issue the subpoenas, however, has certain requisites of finality, because

any action taken by the panel upon the respondents' refusal to comply may severely impact upon the parties. Given the persistent failure to comply with the subpoenas, Sports Factory maintains that it cannot prove its claim. Should an award adverse to Sports Factory be issued by the arbitration panel, this court would ultimately be required to consider whether the refusal to obey the arbitrators' subpoenas resulted in a denial of a hearing to Sports Factory. Should such a denial be found, this court would have the power to vacate an award even in the context of a common law arbitration. 42 Pa.C.S. §§7314(a)(1)(i) and 7341 (Purdon's Pamphlet 1982). Conversely, assuming arguendo that this court may exercise in personam jurisdiction over the Ridley Park respondents, they will have no other opportunity to attack the validity of the subpoenas were this court to declare that it lacks subject matter jurisdiction. Respondents are, therefore, placed on the horns of a dilemma in that, by asserting this right to refuse to comply, they may be subject to adverse inferences drawn by the arbitrator.

The parties, moreover, have raised an issue which is of substantial importance not only to this arbitration, but also to all common-law arbitration proceedings in this Commonwealth. The court does have ultimate review power over petitions to confirm or vacate common law arbitration awards. See 42 Pa.C.S. §§7314(a)(1)(i),(d) and 7341 (Purdon's Pamphlet 1982). As the court may well be asked to consider whether the refusal to comply with the subpoenas resulted in a denial of a hearing to Sports Factory or, conversely, subjected the respondents to adverse inferences, the court will deem its review to be in the nature of a declaratory judgment action ancillary to its statutory authority to consider peti-

tions to confirm or vacate common law arbitration awards.

## C. WHETHER THE ARBITRATORS' SUBPOENAS ARE ENFORCEABLE AT LAW:

All parties to this matter concede that there is an agreement to arbitrate the underlying disputes. All parties further agree that the arbitration clause contained in the lease failed to provide specifically for the application of the Uniform Arbitration Act, 42 Pa.C.S. §7301 et seq. (Purdon's Pamphlet 1982). An agreement to arbitrate a controversy on a nonjudicial basis is conclusively presumed to be an agreement to arbitrate under common law absent designation for statutory arbitration pursuant to Subchapter A of the Pennsylvania Uniform Arbitration Act. See 42 Pa.C.S. §7302(a). Accordingly, the arbitration clause in the lease must be construed as providing for common law, rather than statutory arbitration. Runewicz v. Keystone Insurance Co., 476 Pa. 456, 460, 383 A.2d 189, 191 (1978). Because the parties failed to provide expressly for statutory arbitration in their agreement, Section 7309 of the Uniform Arbitration Act, which grants arbitrators the authority to issue subpoenas and establishes the mechanism for court enforcement thereof, is not applicable to this case.[4]

Each party has implicitly requested that this court determine whether the issuance of the sub-

---

4. Section 7309(a) of the Uniform Arbitration Act provides:

(a) General rule.—The arbitrators may issue subpoenas in the form prescribed by general rules for the attendance of witnesses and for the production of books, records, documents and other evidence. Subpoenas so issued shall be served and, upon application to the court by a party or by the arbitrators shall be enforced in the manner provided or prescribed by law for the service and enforcement of subpoenas in a civil action.

poenas was proper. Sports Factory, seeking to enforce the subpoenas argues that the arbitrators duly issued the subpoenas in accordance with the arbitration rules of the AAA. By incorporating into their agreement Rule 31 of the American Arbitration Associations rules, which provides that arbitrators may issue subpoenas when authorized by law,[5] Sports Factory claims that the parties to the contract agreed to be bound by, and conferred in the panel, the subpoena power. Sports Factory, moreover, argues that the propriety of the arbitrators' action is binding on this court because "common law arbitrators are the final judges of both law and fact in the matters before them." (Brief of Sports Factory at 6, n.6). See Runewicz v. Keystone, supra.

Respondents argue that the subpoenas issued by the arbitration panel were invalid because the AAA recognizes that the authority to issue subpoenas is limited to those instances where the arbitrator "[is] authorized by law." Rule 31, supra. According to the respondents, no provision in the Pennsylvania Uniform Arbitration Act confers such power on a common law arbitrator; and, absent a statutory basis, the arbitrators instantly had no authority to issue the subpoenas. They note that the subpoena power may only be exercised by a court or pursuant to an express statutory grant of the power. In support of this contention, respondents rely upon Commonwealth ex rel Margiotti v. Orsini, 368 Pa. 259, 263, 81 A.2d 891, 893 (1951), where the Court stated that the subpoena power, formerly an exclusively judicial power, "may now be granted to nonjudicial bodies, commissions, agencies or officials *by statute, but the power and the extent of the power is to be determined in each case by the express statutory*

---

5. See p. 3 supra for the text of Rule 31.

*grant.*" (Emphasis in original). Respondents also rely upon In re January, 1974 Special Grand Jury, 238 Pa. Super. 479, 357 A.2d 628, 631 n. 4 (1976), where the Superior Court of Pennsylvania stated that no individual has the power to issue subpoenas without express statutory authority.

Sports Factory contends that the arbitrators' decision to issue the subpoenas is presumptively valid and binding on this court because arbitrators are final judges of both law and fact in matters before them. If the arbitrators' decision were founded upon their interpretation of the lease agreement, the court would be reluctant to disturb their ruling because "the rule, to which all the cases conform, is that where the application or construction of the [arbitration] clause is at issue, the dispute is within the exclusive jurisdiction of the arbitrators." White v. Concord Mutual Insurance Co., 296 Pa. Super. 171, 176, 442 A.2d 713, 715 (1982). Similarly, had the arbitrators predicated their action upon a specific rule of the AAA which conferred the subpoena power upon them, the Court would not review their decision.[6]

The parties to the contract were bound to accept rulings ancillary to a final resolution of the dispute when it proceeded to arbitration. Sports Factory,

---

6. The Supreme Court of Pennsylvania has stated that "procedural questions which grow out of the dispute [in arbitration] and bear on its final disposition should be left to the arbitrator." Kardon v. Portare, 466 Pa. 306, 310, 353 A.2d 368, 370 (1976), citing Wiley & Sons v. Livingston, 376 U.S. 543 (1964). The scope of the arbitrators' power to decide procedural issues ancillary to the resolution of this contractural dispute is more appropriately resolved by the panel hearing the matter. See Harleysville Mutual Cas. Co. v. Adair, 421 Pa. 141, 144, 218 A.2d 791 (1966) (common law arbitrators refused to compel party to submit to discovery).

however, has not referred to any explicit basis, in either the lease agreement or the AAA rules, from which the arbitrators could conclude that they had the authority to issue subpoenas enforceable at law. The contention that the issuance thereof is presumptively valid, lacks sufficient rational or persuasive weight in the absence of any facial argument that the arbitrators acted within their powers pursuant to an interpretation of the lease agreement as supplemented by the AAA rules.

The court will not interfere with an arbitrator's decision which is arguably within the scope of his authority. It can, however, refuse to enforce such irregular actions as arbitrating a matter beyond the intended scope of the arbitration agreement or exercising powers which the parties never agreed to confer upon the arbitrator.[7] Even if the parties had subjected themselves to any decision by the arbitrators, parties should not be required to comply with directives issued by those who are without actual authority to compel such compliance. This is particularly true in the case of the Hechinger respondents who were not parties to the arbitration agreement between Sports Factory and Ridley Park as they never agreed to confer any power upon the arbitrators. In summary, therefore, in the absence of any suggestion that the agreement or the AAA rules conferred power to subpoena witnesses, this court must ascertain whether the common law arbitrators are empowered by statute to issue subpoenas enforceable by a court of law.

---

7. Compare White v. Concord Mutual Insurance Co., 296 Pa. Super. 178, 442 A.2d at 717 (court assumed jurisdiction to decide validity of a challenge to uninsured motorist clauses in insurance policies providing for common law arbitration).

The legislature conferred upon statutory arbitrators the power to subpoena witnesses and provided the mechanism for court enforcement thereof, by express statutory grant pursuant to Section 7309 of the Uniform Arbitration Act of 1980. 42 Pa.C.S. §7309 (Purdon's Pamphlet 1982). The legislature's recent enactment of this provision, and failure to extend this power to common law arbitrators, supports respondents' contention that the common law arbitrators are not authorized by Pennsylvania law to issue subpoenas. Cf. Sherman, Analysis of Pennsylvania's Arbitration Act of 1980, 43 U. Pittsburgh L. Rev. 363, 400 (1982) ("[t]here does not seem to be any statutory or other clear basis for holding that the [common law] arbitrator . . . [has] legal authority to issue a subpoena").

Similarly, the Superior Court of Pennsylvania has recently explained that arbitrators selected by the parties to a contract are not appointed judicial officers. Accordingly, arbitrators "do not act as agents of the court of common pleas. While their position is judicial in nature, they lack the authority of a court since their power does not stem from the law of the land, but, instead, is derived from the contract or agreement of submission made by the parties, and they are limited by the terms thereof." Lewis v. Erie Insurance Co., 281 Pa. Super. 193, 421 A.2d 1214, 1218 (1981).

Finally, even Rule 31 of the AAA, which the parties have implicitly incorporated in their agreement, recognizes that common law arbitrators have the right to issue subpoenas only "when authorized by law." When common law arbitration is involved, no such statutory authority is apparent. The American Arbitration Association, moreover, has adopted the position that unless the power has been conferred by statute, arbitrators have no authority, as of right,

to compel the attendance of witnesses or the production of documents. See American Arbitration Association, Arbitrator Subpoena Power 1-2, 3 Lawyers Arbitration Letter No. 26 (June 1979); Page , Arbitration, N.Y.L.J. p. 1 col. 1. (December 6, 1976).

Accordingly, this court finds that common law arbitrators are without statutory authority to issue subpoenas enforceable at law. Moreover, nothing in the agreement between the parties confers such power upon them. A party's failure to comply with a subpoena, therefore, would not subject it to an action to enforce the subpoenas as a matter of contractual obligation.

It is true that this court did issue a notice, reprinted supra at p. 5, which stated in relevant part that "the Court will take appropriate action to compel compliance" with a subpoena of the American Arbitration Association. That notice, however, does not confer the subpoena power on arbitrators, but only sets forth the local procedure to compel compliance with subpoenas which are otherwise enforceable. Thus, while the notice may have relevance to subpoenas issued by arbitrators under the authority conferred by statute or agreement, it is inapplicable to common law arbitrators who are without such power.

This court recognizes the difficult position of the party who agrees to submit all disputes to arbitration when his opponent refuses to provide him with information essential to proof of his claim.[8] An arbi-

---

8. The court's holding in this regard should not be construed as suggesting that arbitrators may not issue subpoenas, compliance with which is voluntary, or that the arbitrators may not draw adverse inferences and conclusions from a party's refusal to produce witnesses and documents within its control. See A Manual for Commercial Arbitrators, 11-12

tration proceeding, however, is the parties' substitute for a tribunal provided by law. Harper v. Preferred Risk Mutual Ins. Co., 19 D. & C. 3d 123, 127 (1981). Commercial litigants such as those herein, chose by their own contract a forum in which they voluntarily surrendered the right to invoke numerous procedural devices which are available in actions at law, one of which was the right to subpoena witnesses. Cf. Adair, supra, 421 Pa. at 145. It is not within the power of this court to supply a right which the parties have relinquished.

It should be noted that the general assembly apparently recognized the problems associated with the inconsistent provisions governing statutory and common law arbitrations in this state. The legislature has recently enacted Section 7342 of the Judiciary Code. Section 7342 provides, inter alia, that Section 7309 of the Uniform Arbitration Act, which explicitly conferred upon statutory arbitrators the power to subpoena witnesses and provides the mechanism for court enforcement thereof, shall be applicable in future actions, to arbitrations conducted under common law.[9]

In view of the foregoing, this court dismissed the instant petition.

---

American Arbitration Association (Feb. 1977); Willenken, The Often Overlooked Use of Discovery in Aid of Arbitration and the Spread of the New York Rule to Federal Common Law, 35 The Business Lawyer 173, 198 (1979). The arbitrators, rather than this court, can better resolve the problems associated with an uncooperative party.

9. See Section 7342 of the Jara Continuation Act of 1982, H.B. 1804 at p. 48 (Printer's No. 3748) which was signed into law on December 20, 1982. This amendment to the Judiciary Code shall take effect in 60 days.